**COLLINSON, INC., Petitioner**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 11, 2008.

Decided Aug. 19, 2008.

Publication Ordered Oct. 24, 2008.

Kandice J. Giurintano, Harrisburg, for petitioner.

Christopher F. Wilson, Asst. Counsel and Andrew S. Gordon, Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Collinson, Inc. (Collinson) petitions for review of the determination of the Secretary of the Department of Transportation (DOT), denying its bid protest on the basis that it was untimely. We now affirm.

On January 30, 2008, DOT advertised for public bids on a highway construction project, referred to as the "ECMS 81486" project (the project), for DOT's Engineering District 6–0. District 6–0 is comprised of four southeastern counties of Pennsylvania and the City of Philadelphia.[1] The work to be performed involved the maintenance and repair of traffic safety devices including impact attenuating devices and concrete barriers on the highways located in those geographic areas. The proposal for the project identified ninety-one separate work items, each of which was assigned a prequalification classification code. The classification code "J3" was assigned in full or in part to seventy-five of these work items.

Collinson, a highway construction contractor, maintains a current prequalification listing in numerous categories under DOT's prequalification regulations.[2] On March 6, 2008, the day the bid opened, Collinson electronically submitted a bid for the project.[3] On March 7, 2008, DOT informed Collinson that it was rejecting its bid, which was the lowest bid received, because it determined that Collinson was not prequalified to perform work items constituting more than 50% of the total bid price. Specifically, Collinson was not prequalified to perform the work required for the project listed under DOT's "J3" work code category. On March 10, 2008, Collinson applied for an additional prequalification work code category, the "J3" category.

Next, on March 12, 2008, Collinson filed a bid protest with the Secretary of Transportation which challenged the rejection based on its failure to be prequalified for "J3" category work.[4] It also challenged the propriety of DOT's coding multiple work items with the "J3" code for the project. Collinson asserted that when its prequalification renewal was approved in June, 2006, it was approved to do work in

1. DOT incorrectly refers to the counties as being located in "southwestern" Pennsylvania. (DOT's Brief at 2). However, the Court notes that the counties included in District 6–0 are Bucks, Chester, Delaware, Montgomery, and the City of Philadelphia, which are located in southeastern Pennsylvania.

2. DOT's regulations provide that a contractor shall be classified according to the type of work and amount of work for which his experience and financial capacity will qualify him to bid. *See* 67 Pa.Code § 457.5. Bids will be accepted only from contractors who have a current prequalification certificate. 67 Pa. Code § 457.8(a). Each prequalified contractor shall be eligible to bid on projects in which the types of work for which he is classified

constitute at least 50 of the project. 67 Pa. Code § 457.5(d).

3. In order to bid on DOT projects or engage in current work on DOT projects, a contractor must be a registered business partner with DOT's web-based ECMS site. (DOT's Brief at 3).

4. Collinson's bid protest was filed according to Section 1711.1(b) of the Procurement Code, 62 Pa.C.S. § 1711.1(b), which requires a bidder or prospective contractor to file a protest "within seven days after the aggrieved bidder ... or prospective contractor knew or should have known of the facts giving rise to the protest...."

all of the work codes which existed at the time under the "J" category, including "J", "J1", and "J2." Collinson asserted that at some point after its renewal approval, DOT added category "J3" to its list of internal working codes, and its regulations do not provide a process whereby a contractor can seek approval for such an additional category. Collinson asserted that when DOT designated the majority of contract items as category "J3," it restricted the number of contractors who were prequalified to bid on the project to nine. Finally, Collinson asserted that it was only made aware that a "J3" category prequalification was required for the project when it was notified that its bid was rejected by DOT on March 7, 2008. Collinson argued that DOT's reliance on this Court's decision in *Cummins v. Department of Transportation*, 877 A.2d 550 (Pa.Cmwlth.2005), was misplaced, as the facts in that case are distinguishable from the facts in the present case.[5]

On May 9, 2008, the Secretary of Transportation issued a determination denying Collinson's bid protest as untimely. DOT concluded that Collinson was not prequalified to perform "J3" category work, which constituted more than 50% of the total bid price. DOT concluded that the earliest date as of which Collinson had either actual or constructive notice of the additional work item classification of "J3" required for the project was when it was advertised on January 30, 2008. Thus, DOT found that Collinson's bid protest was filed more than seven days after having such notice and was, therefore, untimely filed. On May 23, 2008, Collinson filed a petition for review with this Court.[6]

On appeal[7], Collinson first argues that its bid protest was submitted in a timely fashion because it was submitted less than seven days after DOT's rejection of its bid. Second, it argues that DOT erred in concluding that it was not prequalified to perform work that falls within the "J3" category because it has been prequalified for similar work for decades. Finally, Collinson argues that DOT's assertion that the execution of a contract with another bidder renders its appeal moot should be rejected by this Court.

With regard to the timeliness of its bid protest, Collinson argues that it did file a timely bid protest, as required by the Procurement Code, because it acted within six days after the opening bid date and only five days from the date it received notice of DOT's rejection of its bid. Collinson argues that it did not know of the need to file until its bid was rejected on March 7, 2008, noting that its bid protest was filed only five days later, on March 12, 2008. Collinson avers that DOT's analysis was flawed in reaching the conclusion that its bid protest was untimely filed. Collinson argues that it could not have known prior to DOT's rejection because the project was

5. Collinson had requested a stay of the procurement proceedings pending resolution of its bid protest. However, by order dated April 29, 2008, a DOT hearing officer denied Collinson's request.

6. Collinson filed an application for special relief with this Court on May 27, 2008, seeking to enjoin DOT from awarding the project to another bidder and requesting expedited consideration. DOT filed a response in opposition to that request. By order dated May 29, 2008, this Court denied relief in the nature of an injunction but granted Collinson's request for expedited consideration.

7. DOT's regulations provide that "[t]he court shall hear the appeal, without a jury, on the record of determination certified by the purchasing agency. The court shall affirm the determination of the purchasing agency unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law." 62 Pa.C.S. § 1711.1(i).

not one that should have required it to "pay any particular attention to the specific prequalification codes, and/or to perform calculations to make sure it was prequalified for the work in question." (Collinson's Brief at 17). It also argues that "even had Collinson carefully scrutinized the prequalification codes in the bid proposal ... there was no way for Collinson to expect or predict that [DOT] would not find that [its] existing prequalification did not cover work that was now being administratively coded as J3." *Id.* Collinson argues that DOT failed to provide notice to the industry that it was adding a new category to the list in late 2006. Finally, it argues that this Court's holding in *Cummins* is unsupportive of DOT's position as it did not hold that a contractor should be aware of grounds for protest based upon classification of work at a time a project is advertised.

Section 1711.1(b) of the Procurement Code, which contains the time limitations for filing a bid protest, provides as follows:

> If the protestant is a bidder or offeror or a prospective contractor, the protest shall be filed with the head of the purchasing agency within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have known of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded.... If a bidder or offeror, a prospective bidder or offeror or a prospective contractor fails to file a protest or files an untimely protest, the bidder or offeror, the prospective bidder or offeror or the prospective contractor shall be deemed to have waived its right to protest the solicitation or award of the contract in any forum. Untimely filed protests shall be disregarded by the purchasing agency.

62 Pa.C.S. § 1711.1(b).

We disagree with Collinson insofar as it argues that this Court's holding in *Cummins* is not controlling in the present case. In *Cummins,* Robert J. Cummins, d/b/a Bob Cummins Construction Company (hereafter Cummins), filed his bid protest more than seven days after it filed its original bid, which bid was rejected. Cummins asserted that his bid met the 50% threshold requirement, even though two work items had been classified with work codes that he was not prequalified to perform. Cummins argued that he was prequalified to perform "the skills/work actually involved in those work items" and that the work items should have been given multiple work code classifications by DOT to more accurately reflect the nature of the work involved. *Cummins,* 877 A.2d at 552. DOT asserted that the latest Cummins could have submitted his bid protest was seven days after he submitted his bid, since it was aware which work classifications it was prequalified to bid on as well as the codes/classifications that had been assigned to the work items involved in the project in that case.

This Court concluded that Cummins' arguments were without merit. We considered that Cummins' bid protest was based upon his assertion that two of the project work items were based upon the wrong classification codes and, had they been coded correctly, Cummins would have met the prequalification requirements. This Court noted, therefore, that the relevant inquiry was when did Cummins know or when should it have known of the codes assigned to the two work items. We concluded that the description of each work item and its corresponding code was included in the proposal for bids published in September of 2004. We rejected Cum-

mins' argument that he only needed to review the textual description of the work before bidding and not the codes and agreed with DOT that bidders are obligated to be aware of the codes when they submit their bids. Finally, this Court, because we agreed with DOT's assertion that "the seven day period specified in Section 1711.1(b) began to run at least by the time Cummins submitted his bid," did not decide if Cummins knew or should have known of the facts underlying his bid protest prior to that time. *Cummins*, 877 A.2d at 554–5.

Thus, following the rationale expressed in *Cummins*, we cannot say that the Secretary erred in concluding that Collinson knew or should have known of the facts underlying its bid protest at the time the proposal was advertised on January 30, 2008. Collinson admits that the proposal for the project indicated that certain work items were of the J3 category and that more than 50 of the work was classified as falling within that category. (Collinsons Brief at 15). Collinson further admits that he was not prequalified to perform work in the J3 category at the time he bid on the project. *Id.*

Collinson attempts to blame DOT for his untimeliness and argues that the "J3" classification was "entirely unexpected." (Collinson's Brief at 16). He asserts that the "J3" category was "arbitrary," "most likely, an unintentional mistake" and that the contract for the project was "not one that should have required [him] to pay any particular attention to the specific prequalification codes." (Collinson's Brief at 17). Finally, Collinson argues that even if he had "carefully scrutinized the prequalification codes" and "noticed the disparity involving the J3 code", it was impossible for him to expect or predict that DOT would not find that his current prequalifications did not cover the work coded as "J3." We

find no merit to these arguments from Collinson.

Additionally, Collinson argues that DOT erred in concluding that it was not prequalified to perform work that falls within the "J3" category because it has been prequalified for similar work for decades. It argues that it is fully capable of performing the impact attenuator work required in the project because it is presently performing this very work for DOT under a current contract. (Collinson's Brief at 24). It argues that it was granted prequalification for "J3" work in early May, 2008, several days after the Secretary's final determination was made. Finally, Collinson notes that an agency may waive defects in a bid submission and asserts that because such a waiver would not confer a competitive advantage on it, but merely confirm the ability of it to perform the work, such a waiver is appropriate here. We likewise find no merit to these additional arguments by Collinson.

In essence, Collinson asks us to ignore the facts of the present case. We decline to do so. The facts herein reveal that the work project was advertised by DOT on January 30, 2008, and more than half of the work items included in the project were assigned a prequalification classification code of "J3." Collinson submitted a bid in relation to this project on March 6, 2008. Collinson does not dispute that it was not prequalified to perform "J3" category work at the time of its bid. Collinson did not file its bid protest until March 12, 2008. Thus, we cannot say that the Secretary erred in concluding that Collinson knew or should have known of the underlying facts related to his bid protest at the time the proposal was advertised in January of 2008 and, hence, that Collinson's bid protest was untimely.

Accordingly, the determination of the Secretary is affirmed.

## ORDER

AND NOW, this 19th day of August, 2008, the determination of the Secretary of the Department of Transportation is hereby affirmed.