**GRANT STREET GROUP, INC., Petitioner**

v.

**DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOP- MENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2014.
Decided Sept. 24, 2014.
Publication Ordered Jan. 7, 2015.

C. Grainger Bowman, Harrisburg, for petitioner.

Christopher C. Houston, Chief Counsel, John M. Quain, Jr., Assistant Counsel, and Joshua J. Vecchio, Assistant Counsel, Harrisburg, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

Grant Street Group, Inc. (Grant Street) petitions for review of the Final Determination of the Department of Community and Economic Development (Department) denying Grant Street's bid protest (Bid Protest) of the award to Atex Petros, LLC (Atex Petros) of a contract to design, mar-

ket, and implement the sale of tax credits pursuant to the Innovate in PA Tax Credit (the Act).[1] Generally, Grant Street argues that the Department erred by applying a scoring threshold that eliminated all but one bidder, thereby violating the requirement of Section 513(g) of the Procurement Code[2] that an agency take price into account when awarding a contract. Discerning no error, we affirm.

Section 1805–F of the Act, 72 P.S. § 8805–F, which was enacted by the General Assembly on July 9, 2013, authorizes the sale of up to $100 million in tax credits for insurance premiums to qualified taxpayers (the Sale).[3] The Act provides that the Department may either conduct the Sale itself or do so through a contract between the Department and a third party. Section 1808–F of the Act, 72 P.S. § 8808–F(b). On January 8, 2014, the Department issued Request for Quotation No. 024–2014–1 (the RFQ) seeking a contractor to design, market, and implement the Sale. The RFQ stated that each proposal was to consist of three sealed submittals: a technical submittal; a small diverse business submittal; and a cost submittal. The RFQ stated that, in order for an offeror to be considered responsible and, thus, eligible for selection, its proposal's technical submittal must receive at least 70% of the available technical points.[4] The deadline for proposals was February 21, 2014. (Final Determination, Findings of Fact (FOF) ¶¶ 1–3, 5, 15–16.)

The Department received three proposals, from Grant Street, Atex Petros, and Tax Credit Brokerage, LLC. The Department's five-member Evaluation Committee (Committee) reviewed these proposals. Only Atex Petros' technical submittal received a score over 70%. The Committee scored Grant Street's technical submittal at 62.1%. Because their technical submittals did not meet the 70% threshold, the Department did not consider the cost submittals of Grant Street and Tax Credit Brokerage, LLC. The Department awarded the contract to Atex Petros, which it considered to be the only qualified bidder. (FOF ¶¶ 17–18, 24–29.)

---

1. The Act was added to the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, as amended, by Section 32 of the Act of July 9, 2013, P.L. 270, 72 P.S. §§ 8801–F–8813–F.

2. 62 Pa.C.S. § 513(g). Section 513(g) provides that "[t]he responsible offeror whose proposal is determined in writing to be the most advantageous to the purchasing agency, taking into consideration price and all evaluation factors, shall be selected for contract negotiation." Id.

3. The Sale's purpose is to raise money "to invest in innovation as a catalyst for economic growth." Section 1802–F of the Act, 72 P.S. § 8802–F. The Act provides that "[i]nvestment in the Ben Franklin Technology Development Authority, the Ben Franklin Technology Partners, regional biotechnology research centers, the department and venture capital funds will advance the competitiveness of this Commonwealth's companies in the global economy." Id. Section 1811–F of the Act directs the Department to distribute the net proceeds of the Sale to the Ben Franklin Technology Partners Program, the Venture Investment Program, and to regional biotechnology research centers. 72 P.S. § 8811–F.

4. Specifically, the RFQ states:

To be responsible, a Contractor must submit a responsive proposal and possess the capability to fully perform the project requirements in all respects and the integrity and reliability to assure good faith performance of the project.

In order for a Contractor to be considered responsible for this RFQ and therefore eligible for selection for best and final offers or selection for contract negotiations:

A. The total score for the technical submittal of the Contractor's proposal must be greater than or equal to **70%** of the **available technical points** . . .

(RFQ § III–5, R.R. at 21a (emphasis in original).)

Grant Street filed its Bid Protest, arguing that its technical submittal should have received a higher score and that the Department erred in considering the bidders' technical submittals alone without taking the cost submittals and small diverse business submittals into account. On May 28, 2014, the Department issued the Final Determination, which rejected Grant Street's Bid Protest.

Grant Street then filed its Petition for Review with this Court. Grant Street requested supersedeas from the Department, which denied the request. Grant Street filed an Application for Supersedeas with this Court on July 1, 2014, and the Department filed an Answer. After argument from the parties, this Court issued a Memorandum Opinion and Order on July 21, 2014, granting Grant Street's Application for Supersedeas in part; directing that although the Department and Atex Petros may continue negotiating a contract, they shall not execute any such contract; and expediting the merits on appeal to prevent an unwarranted delay. *Grant Street Group, Inc. v. Department of Community and Economic Development* (Pa. Cmwlth., No. 969 C.D.2014, filed July 21, 2014), slip op. at 8–9 (single judge op.). Grant Street's Petition for Review is now ripe for determination.

Before this Court, Grant Street argues that the Department erred in applying the 70% threshold so as to eliminate all but one offeror, because Section 513(g) requires that agencies take price into consideration when awarding a contract, the 70% threshold set forth in the RFQ may not supersede the Procurement Code, and the Department never determined that Grant Street was not a responsible offeror. The Department, for its part, argues that Grant Street waived all of the arguments

raised on appeal by failing to timely file its Bid Protest and waived its argument regarding the 70% threshold by failing to raise it below. We shall address the Department's waiver arguments first.

The Department argues that Grant Street waived the arguments it raises on appeal by failing to file a timely Bid Protest. Section 1711.1(b) of the Procurement Code, 62 Pa.C.S. § 1711.1(b), provides that an offeror must file its protest:

> with the head of the purchasing agency within seven days after the aggrieved ... offeror ... knew or should have known of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded.

*Id.* The Department argues that this Court has interpreted this provision to mean that a bid protest must be filed no later than seven days after an offeror submits its bid, citing *Cummins v. Department of Transportation*, 877 A.2d 550 (Pa.Cmwlth.2005). *Cummins*, however, did not announce a general rule that bid protests must be filed within seven days of the submission of an offer, but held that, *under the facts of that case*, the disappointed offeror should have known of the facts giving rise to his protest no later than the date he submitted his bid. *Id.* at 554; *see also Omnicare, Inc. v. Department of Public Welfare*, 68 A.3d 20, 24–26 (Pa.Cmwlth.2013) (holding that a bid protest filed after the award of a contract was timely because the protestant did not know and could not have known of the facts giving rise to the protest until it saw the contract).

■ In this case, Grant Street's Bid Protest was not based simply upon the fact that the Department applied a 70% threshold for technical submittals.[5] Rather,

---

5. However, to the extent that Grant Street may also be arguing that the 70% threshold

cannot ever be a valid method for determining offeror responsibility, this argument

Grant Street argues that the Department erred in applying the 70% threshold in such a way that it eliminated all but one offeror and did not compare the cost submittal of that offeror to the cost submittal of any other offeror. The record does not reflect that Grant Street knew or should have known that the Department looked at the cost submittal of only one offeror until Grant Street was debriefed on March 31, 2014. (FOF ¶ 31.) Grant Street filed its Bid Protest one day later, on April 1, 2014, within seven days of the award of the contract on March 26, 2014. (FOF ¶ 32.) Because Grant Street filed its Bid Protest within seven days of the date it knew or should have known that the Department looked at the cost submittal of only one offeror, which were the facts giving rise to its Bid Protest, and because Grant Street filed its Bid Protest no later than seven days after the award of the contract, we hold that the Bid Protest was timely under Section 1711.1(b).

■ The Department also argues that Grant Street failed to raise below during its Bid Protest the argument that it is raising now, which is that the Department erred in applying the 70% threshold so as to eliminate all but one offeror. Pursuant to Rule 1551 of the Pennsylvania Rules of Appellate Procedure, an issue is generally waived if it is not raised before the administrative tribunal. Pa.R.A.P. 1551(a).[6] Here, the Department argues that, in its Bid Protest, Grant Street mainly argued that its technical submittal should have received a higher score and, therefore, would have exceeded the 70% threshold, not that the threshold or its application was invalid. Thus, the Department argues that because Grant Street did not raise this argument it is now waived.

However, Grant Street alleged in its Bid Protest that the Department erred in eliminating Grant Street's proposal from consideration based solely on the score of the technical submittal without also considering the cost submittal. (Bid Protest at 2, R.R. at 43a.) In addition, Grant Street alleged that the Department erred by scoring Grant Street's technical submittal "in a vacuum without regard to the technical ability or cost of competing contractors." (Letter from Grant Street to Department (April 25, 2014) at 3, R.R. at 76a.) Grant Street's argument that the Department erred in applying the 70% threshold in a manner that eliminated all but one offeror is arguably an expansion upon its argument that the Department erred in failing to take cost into account in

---

should have been raised in response to the RFQ. If Grant Street believed that the 70% threshold, itself, was not a permissible method for the Department to use to determine whether an offeror was technically capable of fully performing the contract requirements and, thus, a responsible offeror, as that term is defined by Section 103 of the Procurement Code, 62 Pa.C.S. § 103, it was incumbent upon Grant Street to file a protest in response to the RFQ. *See Common Sense Adoption Services v. Department of Public Welfare,* 799 A.2d 225, 231 (Pa.Cmwlth.2002) (holding that where errors were alleged in an amendment to a RFP, a protest of those errors was waived where the protest was not filed within seven days of the offeror's receipt of the amendment).

6. Rule 1551 provides in relevant part:
No question shall be heard or considered by the court which was not raised before the government unit except:
(1) Questions involving the validity of a statute.
(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.
(3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit.
Pa.R.A.P. 1551(a).

selecting an offeror for best and final offer negotiations, but it is not an altogether new argument. Grant Street's overarching argument on appeal is that the Department erred in failing to compare the proposals' cost submittals, and this argument was generally preserved by the statements quoted above. We, therefore, hold that Grant Street's argument regarding the *application* of the 70% threshold is fairly subsumed within this broader argument and decline to hold that Grant Street waived this argument by failing to raise it below.

We now reach the merits of Grant Street's argument on appeal, which is that the Department violated Section 513(g) of the Procurement Code when it applied the 70% threshold set out in the RFQ so as to eliminate all but one offeror. Section 513(g) provides that "[t]he responsible offeror [7] whose proposal is determined in writing to be the most advantageous to the purchasing agency, taking into consideration price and all evaluation factors, shall be selected for contract negotiation." 62 Pa.C.S. § 513(g). Grant Street argues that, because the Department did not compare Atex Petros' cost submittal to the cost submittals of either of the other two offerors, it did not take price into consideration as required by Section 513(g). The Department argues that it considered the cost submittals of all responsible offerors, but because Atex Petros was the only of-feror whose technical submittal received more than 70% of the available points, it was the only responsible offeror.

■ Section 513(g) requires that a purchasing agency examine the proposals of *responsible offerors* and determine which is the most advantageous, "taking into consideration price and all evaluation factors." *Id.* Section 513(g) does not require a purchasing agency to consider or compare the cost submittals of proposals from offerors it has determined not to be responsible. In this case, the RFQ explicitly provided that an offeror's technical submittal would have to receive a score of at least 70% for the offeror to be considered responsible:

> *In order for a Contractor to be considered responsible for this RFQ and therefore eligible for selection for best and final offers or selection for contract negotiations:*
>
> A. The total score for the technical submittal of the Contractor's proposal must be greater than or equal to **70%** of the **available technical points** ...

(RFQ § III–5, R.R. at 21a (italic emphasis added, bold emphasis in original).) [8]

■ Grant Street argues that the Department erred by applying the 70% threshold to eliminate Grant Street because the 70% threshold "is not part of the definition of 'responsible offeror' under the Procurement Code." [9] (Grant Street Br. at 28.) However, nothing in the Procure-

---

7. Section 103 of the Procurement Code defines the term "responsible offeror" as "[a]n offeror that has submitted a responsive proposal and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa.C.S. § 103.

8. Grant Street argues that the RFQ, in setting forth the 70% threshold, draws a distinction between whether an offeror is responsible and whether an offeror may be eligible for best and final offer negotiations. However, the language quoted above is quite explicit that meeting the 70% threshold is required in order to be considered a responsible offeror and, *therefore*, to proceed to best and final offer negotiations.

9. We note, however, that Grant Street does not argue that the 70% threshold is contrary to the law in and of itself, only that its application to eliminate all but one offeror is impermissible.

ment Code prohibits purchasing agencies from setting criteria to use in determining whether an offeror is responsible, i.e. "possesses the capability to fully perform the contract requirements in all respects." Section 103 of the Procurement Code, 62 Pa.C.S. § 103. The RFQ was explicit that an offeror would not be considered responsible if its technical submittal did not obtain at least 70% of the available points. Grant Street did not challenge or question this provision in the RFQ but submitted its proposal subject to the terms of the RFQ.

■ Section 513(g) requires a purchasing agency to take price into consideration when determining which "responsible offeror" should be selected for contract negotiation. This provision neither requires a purchasing agency to revisit its determination that an offeror is not responsible nor does it prohibit a purchasing agency from applying announced criteria to determine that all but one offeror is non-responsible.[10] Here, the Department was faced with only one offeror who met the RFQ's criteria to be considered a responsible offeror.[11] Under these circumstances, we cannot say that the Department erred or violated the Procurement Code by considering the cost submittal of that offeror alone. We, therefore, affirm the Final Determination of the Department.

### ORDER

**NOW,** September 24, 2014, the Final Determination of the Department of Community and Economic Development in the above-captioned matter is hereby **AFFIRMED.**

---

**10.** We note that, on appeal, Grant Street is not arguing that the Department erred in not scoring its technical submittal higher than 70%.

**11.** Grant Street does not argue that it would not have been permissible for the Department to award the contract to Atex Petros if it had been the only offeror in response to the RFQ.