**CENTURYLINK PUBLIC
COMMUNICATIONS,
INC., Petitioner**

v.

**DEPARTMENT OF CORRECTIONS,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 9, 2015.
Decided Feb. 17, 2015.

Jan L. Budman, II, Harrisburg, for petitioner.

Valerie Janosik–Nehilla, Assistant Counsel, and Julie R. Tilghman, Assistant Counsel, Mechanicsburg, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, and ROBERT SIMPSON, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY President Judge PELLEGRINI.

CenturyLink Public Communications, Inc. (CenturyLink) petitions for review of the order of the Department of Corrections (Department) dismissing CenturyLink's protest of the selection of Securus Technologies, Inc. (Securus) for contract negotiations as a result of Request for Proposal (RFP) for a competitive sealed proposal[1] to provide for a secure inmate telephone system (ITS) for inmates housed at Department facilities. We affirm.

## I.

In October 2013, the Department issued the RFP "to provide inmates confined at [Department] facilities with a highly reliable, high quality service to call family and friends, [and to] give the [Department] the capability to perform oversight and monitoring of inmate calls and fund the inmate general welfare fund." (Reproduced Record (RR) at 42a). The RFP stated that the sole point of contact was the Issuing Officer and that the Department would notify in writing the offeror "whose proposal is determined to be the most advantageous" by a committee of qualified personnel after considering "all of the evaluation factors." (*Id.* at 42a, 56a).[2]

The following criteria was to be used to evaluate the proposals: (1) technical considerations such as inmate telephone service, contractor qualifications, capability and capacity for monitoring and recording, ease of use and investigative and intelligence features, maintenance and training (50% of total points); (2) cost rating giving the proposal with the lowest total cost the maximum number of points and rating the others based on a predetermined formula (30% of total points);[3] (3) Small Diverse

---

**1.** Section 513(a) of the Commonwealth Procurement Code (Procurement Code) states that "[w]hen the contracting officer determines in writing that the use of competitive sealed bidding is either not practicable or advantageous to the Commonwealth, a contract may be entered into by competitive sealed proposals." 62 Pa.C.S. § 513(a).

**2.** Section 513(g) of the Procurement Code states that "[t]he responsible offeror whose proposal is determined in writing to be the most advantageous to the purchasing agency, taking into consideration price and all evaluation factors, shall be selected for contract negotiation." 62 Pa.C.S. § 513(g). The Procurement Code does not provide a "rigid, detailed procedure or strict requirements for

the RFP process," but "preserves a great deal of agency discretion...." *Stanton–Negley Drug Company v. Department of Public Welfare*, 943 A.2d 377, 387 (Pa.Cmwlth.), *appeal denied*, 598 Pa. 784, 959 A.2d 321 (2008).

**3.** Specifically, Part IV–3(A)(9)(a) of the RFP provided that the offeror's commission to be paid to the Department remain fixed unless mutually modified by the parties, and subpart (b) stated that the commission "shall be computed as a percentage of the total gross revenue generated by the application of the approved call rates for every completed collect, prepay or prepaid inmate telephone call (Local, IntraLATA, InterLATA, Interstate, or International)...." (RR at 71a).

Business (SDB) Participation granting additional points based on the extent of SDB participation (20% of total points); and (4) Domestic Workforce Utilization adding bonus points to the total points based on the use of the domestic work force in fulfilling the contract (3% bonus points). The RFP specifically provided that an offeror's proposal must receive at least 70% of the available technical points to be eligible for continued contract negotiations and to submit a best and final offer (BAFO). The RFP provided that the Department "must select for contract negotiations the Offeror with the highest overall score...." (*Id.* at 59a, 60a).

The Department was permitted to seek oral or written clarification of a proposal at any stage of the selection process prior to contract execution "to ensure thorough mutual understanding" and "responsiveness" to its requirements. (RR at 45a).[4] The Department also reserved the right to request additional information necessary to ensure the offeror's ability to perform; to conduct investigations "as deemed necessary" to determine an offeror's ability to perform; and to reject a proposal if the additional information or investigation fail to show the proper qualification to carry out the obligations of the RFP. (*Id.* at

51a). Any offeror determined to be "reasonably susceptible of being selected" could also be required to provide a site demonstration to show "the functional capability" to perform. (*Id.* at 85a).[5]

The Department was to notify all offerors in writing as to who was selected for contract negotiations after determining "the proposal that is most advantageous to the [Department]." (RR at 49a). The Department would also notify offerors whose proposals were not selected when contract negotiations were successfully completed and the Department has received the final contract signed by the selected offeror. On receiving notification of non-selection, an offeror was given the opportunity to be debriefed or to file a protest "within **seven** days after the protesting party knew or should have known of the facts giving rise to the protest," but it could not be filed "later than **seven** days after the date the notice of award of the contract is posted on the [Department of General Services] website." (*Id.* at 49a–50a) (emphasis in original).[6]

In December 2013, the Department received proposals from Securus, CenturyLink, Global Tel*Link Corporation (GTL),

---

4. The RFP stated that "[a]ll of the Offeror's information and representations in the proposal are material and important and the [Department] may rely upon the contents of the proposal in awarding the contract(s)." (RR at 48a). It also stated that the Department "shall treat any misstatement, omission or misrepresentation as fraudulent concealment of the true facts relating to the Proposal submission, punishable pursuant to 18 Pa. C.S. § 4904 [(relating to unsworn falsification to authorities)]." (*Id.*).

5. Section 513(f) of the Procurement Code states:

As provided in the [RFP], discussions and negotiations may be conducted with responsible offerors for the purpose of clarifi-

cation and of obtaining [BAFOs]. Responsible offers shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals. In conducting the discussions, there shall be no disclosure of any information derived from proposals submitted by competing offerors.

62 Pa.C.S. § 513(f).

6. Section 1711.1(b) of the Procurement Code states that "[i]f the protestant is a[n] ... offeror ... the protest shall be filed within seven days after the aggrieved ... offeror ... knew or should have known of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded...." 62 Pa. C.S. § 1711.1(b).

and Telmate. In March 2014, the Issuing Officer issued a Recommendation for Contractor Selection based on the Evaluation Committee (Committee) review of the technical proposals submitted by the bidders. Neither CenturyLink nor Telmate met the threshold 70% of the points necessary to be considered for a site demonstration, BAFOs, or selection for contract negotiations: CenturyLink received 348.68 and Telmate received 330.50 out of the 500 total points available.

However, because GTL and Securus received over 70% of the total available points, the Committee had conducted site visits at prisons where each had systems in place. Those technical evaluations were reported to the Issuing Officer and the technical scores were updated. The Department then opened and scored the proposals and combined the technical scores, cost scores and SDB and bonus points and Securus and GTL submitted BAFOs for their costs and SDB proposals. (*Id.* at 288a, 364a–365a). Ultimately, Securus received the highest score, 861.32 points, and the Department determined that Securus's proposal was the most advantageous to the Commonwealth and a contract was executed in April 2014 following negotiations; CenturyLink was notified that the contract was awarded to Securus.[7]

In April 2014, CenturyLink was informed during a debriefing that its proposal did not meet the 70% threshold and that it lost points because: (1) it did not respond to Part IV–3(A)(2) of the RFP requiring agreement to comply with federal, state and local laws, rules and regulations and Part IV–3(A)(3) requiring the provision of TTYs or portable telephones; (2)

infrastructure maintenance issues were noted during reference checks with another Department of Corrections; (3) the proposal indicated that additional investigative tools needed to be negotiated at an additional cost; and (4) there was a lack of attention to detail in its answers leading to conflicting statements on pages 93, 94 and 99 of its proposal. (RR at 468a).

## II.

In May 2014, CenturyLink filed a bid protest and amended protest alleging various deficiencies in the proposal process that caused it to miss the 70% threshold.[8] The Issuing Officer issued a response and CenturyLink filed a reply asking the Secretary for a hearing on its protest. The Secretary permitted Securus to file a response to CenturyLink's protest and CenturyLink objected to its participation.

### A.

Regarding Securus's participation in the protest, the Secretary noted that while the Procurement Code is silent on whether a selected contractor can participate in a bid protest, the Department of General Service's Procurement Handbook permits such participation where "substantial issues are raised by the protest." (RR at 791a). The Secretary determined that "Securus has an interest much like that of a civil service employee who is selected for a job in a case where a non-selectee files a civil service appeal," and that this Court "has made clear that the selectee is not only an important party, but an indispensable one to the litigation." (*Id.* at 791a–

---

7. Section 561 of the Procurement Code provides that the determinations required by Section 513(a) and (g) "are final and conclusive unless they are clearly erroneous, arbitrary, capricious or contrary to law." 62 Pa.C.S. § 561.

8. The protest's filing resulted in an automatic stay of the award to Securus under Section 1711.1(k) of the Procurement Code, 62 Pa. C.S. § 1711.1(k).

792a) (citation and footnote omitted). Nevertheless, the Secretary explained that "nothing Securus submitted to me actually impacted on my decision on the merits." (*Id.* at 792a n. 3) (emphasis in original).

**B.**

The Secretary then addressed CenturyLink's claim that the Department improperly deducted technical points. CenturyLink claimed that the deduction for not agreeing to comply with federal, state and local laws, rules and regulations and that additional equipment requirements was improper because those requirements were covered by its separate agreement in which it had agreed to comply with reporting, maintenance and technical requirements in other areas of its proposal. The Secretary rejected this claim finding that nothing in the record showed that those provisions encompass a commitment to comply with state and federal law and additional equipment requirements.

The Secretary also rejected CenturyLink's contention that it should have not been penalized based on negative feedback, which it believed came from the Nevada Department of Corrections, because that feedback related to shared infrastructure problems which were not relevant to its Pennsylvania proposal. While acknowledging that that negative feedback may not be relevant to the situation in Pennsylvania, the Secretary found such criticism can be considered because it demonstrates CenturyLink's attitude in resolving problems.

CenturyLink also claimed that it wrongfully lost points because under its proposal, certain investigative tools were to be negotiated at an additional cost, and it would be impossible for any other offeror of such products not to do likewise and that the evaluators did not apply a base financial analysis in making the award.

After stating that this contention is really a challenge to the weight the issuing officer chose to give to the proposal, the Secretary rejected the purported requirement to apply the base financial offer analysis and such was discretionary; and there was no evidence that the selected method was chosen to favor any particular offeror.

**C.**

CenturyLink also claimed in its protest that the Department violated Section 513(g) of the Procurement Code by not selecting the contract that was the most financially advantageous because the Issuing Officer failed to seek clarification of the purported deficiency in its proposal. After noting that this provision of the Procurement Code only requires the Commonwealth to select the proposal most advantageous, not the most financially advantageous, the Secretary found that clarification is within the Issuing Officer's discretion, and that CenturyLink, as an experienced offeror, should have sought clarification if necessary rather than placing the burden on the Issuing Officer. Moreover, in determining what is most advantageous, the Secretary explained that the amount of money that the Commonwealth could receive was not the only criterion by which an RFP was to be scored with weight given to other components in the respective proposals of which CenturyLink was well aware given that those factors appeared in the RFP.

**D.**

In its protest, CenturyLink also argued that the Department violated Section 513(a) of the Procurement Code because the Issuing Officer did not first determine, in writing, prior to the issuance of the RFP, that competitive sealed proposals were necessary because the use of competitive sealed bidding was not practical or

advantageous. The Secretary dismissed these claims for two reasons. First, he agreed with the Issuing Officer that CenturyLink did not timely raise the claim because it was required to do so within seven days after it knew or should have known when the RFP was issued. The Secretary explained that "[t]he issued document was entitled 'Request for *Proposals*,' not 'Invitation to Bid,'" and CenturyLink "apparently had no major issue with whether what was being sought was a proposal or a bid as it submitted a proposal in response." (*Id.* at 797a–798a) (emphasis in original). Nonetheless, the Secretary also found that the required determination was made in the Notice of Forthcoming Procurement and Contractor Selection Memorandum which included a justification for the use of sealed proposals rather than sealed bids.[9]

### E.

Finally, CenturyLink claimed that Section 513(g) requiring the contract be most advantageous to the Commonwealth was violated because of Securus's failure to fully agree to pay the commission under Part IV–3(A)(9)(b) of the RFP based on the FCC's order. First, the Secretary rejected the Issuing Officer's determination that the protest was not timely filed because of the untimely disclosure of documents revealing this issue.[10] On the merits, the Secretary found that "Securus's response was not misleading and its basis for the qualifying language was clear" and that it was merely agreeing to abide by the FCC's ultimate determination.[11] (*Id.* at 803a). Citing *JPay Inc.*, the Secretary deferred to the Department's discretion as to considering matters outside the bidding process and to waive RFP requirements, and determined that no waiver was required in this case because the FCC's order is the subject of ongoing litigation between Securus and CenturyLink and Securus has kept the Issuing Officer updated on those proceedings as necessary.[12]

---

**9.** CenturyLink also claimed that the Department violated the Procurement Handbook and RFP by failing to provide copies of the contract, Securus's proposal, the prepared debriefing statement, and written notification of Securus's selection for contract negotiations. Regarding the violation of Part I, Chapter 6(B)(14)(e) of the Procurement Handbook, the Secretary found that the issue was moot because the documents had been provided to CenturyLink and explained that this Court held in *JPay, Inc. v. Department of Corrections*, 89 A.3d 756 (Pa.Cmwlth.2014), that the disclosure of these documents is not mandated. (RR at 800a).

**10.** Part I, Chapter 6(B)(14)(e) of the Procurement Handbook states that "[t]he Recommendation for Contractor Selection memorandum, successful proposal and contract, with any non-public information redacted, or a link to where posted online, shall be provided upon request."

**11.** As the Secretary explained:

[CenturyLink] argues that Securus agreed to comply with this provision, but then qualified that agreement by stating:

> The recent FCC Order required that no commission payment can be made for interstate calls of any type. Securus will follow FCC orders related to all calling and our commission payments will reflect the appropriate payments. In all instances Securus will communicate with and notify the [Department] of any regulatory changes that impact the payment of total gross revenues generated by the approved call rates for every completed call on the Securus system.

It asserts that Securus's agreement to comply, coupled with its explanation of the FCC prohibition, is confusing and misleading. It also asserts that this representation is incorrect and will result in a significant reduction in commission revenue to the Commonwealth.

(RR at 801a–802a) (citation omitted).

**12.** As a corollary to this claim, the Secretary denied CenturyLink's request to hold a hear-

As a result of those findings, the Secretary denied CenturyLink's protest and vacated the automatic stay of the award.

## III.

### A.

In this appeal,[13, 14] CenturyLink first claims that the Secretary erred in finding that deducting points from its proposal was reasonable by addressing the items ignored by the Contracting Officer and in failing to permit CenturyLink an opportunity to respond. However, Section 1711.1 of the Procurement Code states, in relevant part:

(e) **Evaluation of protest.**—The head of the purchasing agency ... shall review the protest and any response or reply and may request and review such additional documents or information he deems necessary to render a decision and may, at his sole discretion, conduct a hearing. The head of the purchasing agency ... shall provide to the protestant and the contracting officer a reasonable opportunity to review and address any additional documents or information deemed necessary ... to render a decision.

(f) **Determination.**—Upon completing an evaluation of the protest in accordance with subsection (e), the head of the purchasing agency shall issue a writ-

ten determination stating the reasons for the decision.....

62 Pa.C.S. § 1711.1(e), (f).

Based on the foregoing, the Secretary did not err or abuse his discretion in considering CenturyLink's proposal in disposing of its protest even though the Contracting Officer did not address the specific points outlined at the debriefing or CenturyLink's rebuttal thereto or in affording CenturyLink the opportunity to respond because it had already done so. Moreover, the Secretary specifically explained his reasons for rejecting CenturyLink's objections to the deduction of technical points as outlined at debriefing due to its failure to agree to comply with applicable laws and regulations or additional equipment requirements; the negative feedback received from the Nevada Department of Corrections; the cost-excluded items in its proposal; and the conflicting statements and/or lack of attention to detail in responding to certain requests in the proposal. (RR at 793a–795a). Contrary to CenturyLink's assertion, the Secretary did not improperly take on an adversarial role or abuse his discretion or err as a matter of law in doing so.

### B.

In a separate claim, citing *Integrated Biometric Technology, LLC v. Depart-*

ing on this issue. *See* Section 1711.1(e) of the Procurement Code, 62 Pa.C.S. § 1711.1(e) ("The head of the purchasing agency ... may, at his sole discretion, conduct a hearing....").

**13.** Section 1711.1(i) of the Procurement Code states that "[t]he court shall hear the appeal, without a jury, on the record of determination certified by the purchasing agency," and "[s]hall affirm the determination of the purchasing agency unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law." 62 Pa.C.S. § 1711.1(i). "An abuse of

discretion is not merely an error in judgment;" rather, "[a]n abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 713 (Pa. Cmwlth.2013).

**14.** This Court denied Securus's application for leave to intervene in the appeal and treated its brief as the brief of *amicus curiae.*

*ment of General Services,* 22 A.3d 303 (Pa.Cmwlth.2011), CenturyLink argues that the Secretary violated Section 1711.1(e) by considering its proposal and the Nevada Department of Corrections' criticism without giving it the opportunity to respond. In that case, this Court held that the deputy secretary violated Section 1711.1(e) by failing to give the bidder the opportunity to address information contained in the bidder's filings with the Securities and Exchange Commission that were not considered in the initial rejection of the bidder's proposal to an RFP due to the bidder's purported lack of financial soundness. *Integrated Biometric Technology, LLC,* 22 A.3d at 307–08.

In contrast, in the instant case, the information considered by the Secretary in disposing of CenturyLink's protest was information considered by the Department in determining CenturyLink's technical score and was raised and addressed in its protest of the Department's determination in that regard. As a result, *Integrated Biometric Technology, LLC* is inapposite; CenturyLink's reliance thereon is misplaced; and the Secretary could properly consider this information in disposing of that protest.

### C.

█ CenturyLink next claims that the Department violated Part IV–3(A)(9)(B) of the RFP by selecting Securus because Securus stated in its proposal that it does not intend to pay commissions on revenues generated by interstate calls, and the Sec-

retary improperly ignored this violation and erred in failing to conduct a hearing on this issue under Section 1711.1(e). However, as noted by the Secretary, CenturyLink mischaracterizes the response of Securus's proposal in making this argument. In the proposal, Securus agreed to comply with this requirement and merely indicated that "[t]he recent FCC Order requires that no commission payment can be made for interstate calls of any type," and that it would "follow FCC orders related to all calling" and that its "commission payments will reflect the appropriate payments." (RR at 324a). In his response, the Contracting Officer indicated that "[p]rior to Securus commencing performance under the contract, this issue will be revisited and a determination will be made as to the current status of the FCC ruling." (*Id.* at 371a). Contrary to CenturyLink's assertion, Securus did not indicate that it would not pay the commissions; it merely stated that it would comply with the FCC's determination in this regard following the disposition of this issue in the federal courts.[15]

Moreover, the Secretary did not violate Section 1711.1(c) of the Procurement Code [16] or misapply our opinion in *JPay* in disposing of this protest. Section 1711.11(c) permitted CenturyLink to submit any additional documents or information that it deemed relevant to the protest, but this did not affect the Secretary's exercise of discretion regarding whether further pursuit of this issue was necessary

---

15. CenturyLink does not allege that this is a requirement mandated by statute; that the Department did not reserve the right to waive defects in the RFP; and that the purportedly "non-compliant submission may be waived, accepted or cured if: (i) the effect of the waiver will not deprive the [Department] of the assurance that the contract will be entered into and performed; and (ii) the waiver

will not confer a competitive advantage on the offeror over other offerors.". *JPay,* 89 A.3d at 766.

16. 62 Pa.C.S. § 1711.1(c). Section 1711.1(c) states, in relevant part, that "[t]he protestant may submit with the protest any documents or information it deems relevant to the protest."

through hearings on the matter involving an issue of law and not one of disputed facts. We discern no abuse of that discretion in this regard. *See, e.g., JPay,* 89 A.3d at 767 ("The Designee noted in the Determination that the prior experience requirements were not minimum requirements but rather could be waived or considered in the scoring. As there was no evidence that any nonconformity, if it existed, was ignored, the Designee concluded that the selection of GTL for contract negotiations was consistent with the terms of the 2012 RFP. We do not believe that the Designee abused his discretion here by not holding a hearing on JPay's allegations concerning GTL's prior experience.").[17]

### D.

CenturyLink next claims that the Department violated Section 513(g) of the Procurement Code by failing to consider the remainder of its proposal after it failed to meet the 70% technical requirement threshold and by failing to seek further clarification, request additional information, or make any investigation regarding the purported deficiencies in its technical proposal.

■ However, as noted above, Part III–5(A) of the RFP stated that "[i]n order for an Offeror to be considered responsible for this RFP and therefore eligible for selection for [BAFO] or selection for contract negotiations ... [t]he total score for the technical submittal of the Offeror's proposal must be greater than or equal to **70%** of the **available technical points** ...." (RR

at 59a) (emphasis in original). CenturyLink did not timely protest this threshold requirement for further consideration at the time that it submitted its proposal and, therefore, it has waived any claim of error in this regard. 62 Pa.C.S. § 1711.1(b); *Scientific Games International, Inc. v. Governor's Office of Administration,* 78 A.3d 714, 718–19 (Pa.Cmwlth.2013).

■ In addition, while the RFP provided that "offerors may be required to make oral or written clarification of their proposals" and that the Department "reserve[d] the right to request additional information" and "may make investigations as deemed necessary," (RR at 45a, 51a), this in no way required the Department to do so. Indeed, as noted above, Section 513(f) of the Procurement Code provides, in pertinent part, that "[a]s provided in the [RFP], discussions and negotiations may be conducted with responsible offerors for the purpose of clarification and of obtaining [BAFOs]," and "[r]esponsible offers shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals...." 62 Pa. C.S. § 513(f). Because CenturyLink did not qualify as a responsible offeror under the RFP, the Department did not err in failing to seek further clarification or information regarding its proposal and did not err in seeking further information from Securus because Securus did qualify. *Language Line Services v. Department of General Services,* 991 A.2d 383, 389–90

---

**17.** *See also Durkee Lumber v. Department of Conservation,* 903 A.2d 593, 597 (Pa.Cmwlth. 2006) ("Pursuant to 62 Pa.C.S. § 1711.1(e), the Secretary has 'sole discretion' to decide whether a hearing is necessary to decide a bid protest. His decision not to hold a hearing can only be reversed if he exercised his discretion with bad faith, fraud, capricious action or abuse of power. Where there are of

record sufficient unchallenged facts necessary to make the required determination, no hearing is required. If, as the Secretary found, there are no disputed material facts necessary to make his determination, then necessarily he has not abused his discretion by refusing to hold a hearing.") (citations and footnote omitted).

(Pa.Cmwlth.), *appeal denied,* 608 Pa. 671, 13 A.3d 481 (2010).

### E.

■ CenturyLink also argues that the Department violated Section 513(a) of the Procurement Code because it was required to make a written determination that the competitive sealed bidding process was not "practicable" or "advantageous" before it engaged in the instant RFP process. However, CenturyLink asserts that the requisite *"Form BOP–124* [18] was not previously completed and posted on the PAe-Marketplace website when the RFP was issued" providing the necessary detailed explanation and that "[i]f *Form BOP–124* had been completed and posted when the RFP issued, it would have been included as a retrievable file document on the 'Solicitation' page for the RFP found on the PAeMarketplace website—it was not." Brief of Petitioner at 52.

Based on the foregoing, we agree with the Secretary that CenturyLink has waived this 513(a) claim by failing to timely raise it because it was aware of the facts underlying this allegation of error at the time it submitted its proposal in response to the RFP. 62 Pa.C.S. § 1711.1(b); *Scientific Games International, Inc.,* 78 A.3d at

718–19. *See also Corizon Health, Inc. v. Department of General Services,* 2013 WL 3960974 (Pa.Cmwlth. No. 1740 C.D.2012, filed January 4, 2013) slip op. at 20 ("The fact that DGS did not adequately explain why it was not using competitive sealed bidding was apparent when DGS first issued the RFP on September 16, 2011, without setting forth a reason for using an RFP. (RR at 4a.) Corizon chose to engage in the RFP process rather than challenge it. Corizon did not protest until after it failed to win the contract, filing its protest on July 6, 2012. That is untimely under the Code. *See Cummins v. Department of Transportation,* 877 A.2d 550 (Pa. Cmwlth.2005) (holding that protest period begins to run when grounds are known or should have been known, even if that occurs before the proposal or bid is denied); *Collinson, Inc. v. Department of Transportation,* 959 A.2d 480 (Pa.Cmwlth.2008) (following *Cummins*).").

### F.

■ Finally, CenturyLink contends that Securus's participation in its protest was unlawful because the only proper parties to a protest are the protestant and the contracting officer under Section 1711.1(a), (d) and (e) of the Procurement Code, 62 Pa.C.S. § 1711.1(a),[19] (d)[20] and (e), and

---

18. Part I, Chapter 6(B)(1)(c) of the Procurement Handbook states:

The agency must complete Form BOP–124, Determination to Use Competitive Sealed Proposals (RFP) Method of Procurement, to document the justification for use of this procurement method. The completed form must be submitted to DGS along with the Notice of Forthcoming Procurements. The requesting Agency should retain a copy of the BOP–124 as part of the contract file.

(1) The Issuing Office must post the completed Form BOP–124, Determination to Use Competitive Sealed Proposals (RFP) Method of Procurement, with the solicitation when issued.

19. Section 1711.1(a) states, in relevant part, that "[a] bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in connection with the solicitation or award of a contract ... may protest to the head of the purchasing agency in writing."

20. Section 1711.1(d) states:

Within 15 days of receipt of a protest, the contracting officer may submit to the head of the purchasing agency and the protestant a response to the protest, including any documents or information he deems relevant to the protest. The protestant may file a reply to the response within ten days of the date of the response.

Securus was not an aggrieved offeror because it was awarded the contract in connection with the RFP.

■ However, as noted by the Secretary, while the Procurement Code does not specifically provide for the participation of other parties in a protest, Chapter 58(D) of the Procurement Handbook provides for the participation of "all bidders and offerors who appear to have a substantial and reasonable prospect of winning the award...." In sum, the Secretary did not err in permitting Securus to participate in the instant protest. *See Corizon Health, Inc.,* slip op. at 15 ("The Procurement Code authorizes the presiding officer to solicit information he deems necessary to render a decision from many sources, including other bidders or offerors. 62 Pa. C.S. § 1711.1(e). The parties agree that under the DGS Procurement Handbook, 'all bidders and offerors who appear to have a substantial and reasonable prospect of winning the award shall be notified [of the protest] and may file their agreement/disagreement with the purchasing agency....' (DGS Procurement Hand-

book, Ch. 58(D).) When Corizon filed its protest, the Deputy Secretary suspended the contract award to Wexford until after the protest was resolved, alerted the Contracting Officer and Wexford that a protest had been filed, and solicited responses. (F.F. ¶ 28.) Corizon has failed to establish that the Deputy Secretary's procedural decisions were prohibited by the Procurement Code or constituted an abuse of discretion.").[21]

Accordingly, the Department's order is affirmed.

### *ORDER*

AND NOW, this *17th* day of *February,* 2015, the order of the Department of Corrections dated June 30, 2014, at Docket No. BP–36 of 2014, is affirmed.

---

**21.** Moreover, the Secretary explained, "I recognize that my ruling creates a question of first impression and, should an appeal be taken from this decision, I make it clear that, in fact, *nothing* Securus submitted to me actually impacted on my decision on the merits." (RR at 792a) (emphasis in original). As a result, any error by the Secretary in this regard was harmless and does not require that his order be reversed. *See, e.g., Garner v.*

*Pennsylvania Human Relations Commission,* 16 A.3d 1189, 1200 (Pa.Cmwlth.2011) ("[R]eversible error requires the determination 'must not only be erroneous, but also harmful or prejudicial to the complaining party.' *D.Z. v. Bethlehem Area School District,* 2 A.3d 712, 726 (Pa.Cmwlth.2010)[, *appeal denied,* 612 Pa. 693, 29 A.3d 798 (2011)]. '[A]n order of an administrative agency will not be disturbed for harmless error.' *Id.* at 725–26.").