# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gateway Health Plan, Inc.,     :
    :
            Petitioner     :
    :
            v.     : No. 1924 C.D. 2016
    : Submitted: April 21, 2017
Department of Human Services,     :
    :
            Respondent     :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                   **FILED: July 24, 2017**

Gateway Health Plan, Inc. (Gateway), in this petition for review, appeals a final determination of the Department of Human Services (Department) under Section 1711.1 of the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. § 1711.1, that denied Gateway's bid protest challenging the Department's selection of offerors for the Department's Community HealthChoices (CHC) Program. For the reasons set forth below, we affirm.

On March 1, 2016, the Department issued Request for Proposal No. 12-15 (the RFP) to obtain competitive sealed proposals from managed care organizations (MCOs) to implement the CHC Program, a managed care program to provide integrated physical health and long-term services and supports for older

Pennsylvanians and adults with physical disabilities. (Record Item (R. Item) 14, Final Determination ¶¶5-7; R. Item 10 Ex. 1, RFP at 1, 42, Reproduced Record (R.R.) at 116a, 157a.) The RFP divided the Commonwealth into five geographic zones - the Southwest, Southeast, Lehigh/Capital, Northwest and Northeast zones – and invited MCOs to submit proposals for one or more of those five zones. (R. Item 14, Final Determination ¶6; R. Item 10 Ex. 1, RFP at 2-5, 7, 14, R.R. at 117a-120a, 122a, 129a.) The RFP stated that "[t]he Department anticipates awarding agreements to no fewer than two and no more than five Offerors depending upon the zone." (R. Item 10 Ex. 1, RFP at 5, R.R. at 120a.)

The RFP required that the proposals contain a Technical Submittal, which was weighted as 80% of the total points in scoring the proposals, and a Small Diverse Business (SDB) Submittal, weighted at 20%, and offerors could receive up to 3% in bonus points for committing to Domestic Workforce Utilization. (R. Item 10 Ex. 1, RFP at 14, 38-40, R.R. at 129a, 153a-155a.) The RFP further provided that the evaluation of the Technical Submittal would be based on four criteria: soundness of approach, financial condition, personnel qualifications, and prior experience. (*Id.* at 38, R.R. at 153a.) To be considered a responsible offeror eligible for selection, an offeror was required to earn at least 70% of the available Technical Submittal points. (*Id.* at 40, R.R. at 155a.) Gateway did not file any protest with respect to the terms of the RFP.

The deadline for submission of proposals was May 2, 2016. (R. Item 10 Ex. 4, Selection Memorandum, R.R. at 169a.) The Department received proposals for one or more zones from a total of fourteen MCOs, consisting of eight proposals for the Southwest zone, fourteen proposals for the Southeast zone, twelve proposals for the Lehigh/Capital zone, nine proposals for the Northwest

2

zone, and nine proposals for the Northeast zone. (R. Item 14, Final Determination ¶17; R. Item 10 Ex. 4, Selection Memorandum, R.R. at 169a-170a.) Gateway timely submitted proposals for all five zones. (R. Item 14, Final Determination ¶18; R. Item 10 Ex. 4, Selection Memorandum, R.R. at 171a-174a.) Following evaluation and scoring of the proposals, the Department selected Pennsylvania Health and Wellness (PHW), Vista Health Plan, Inc. (Vista), and UPMC For You, Inc. (UPMC) for contract negotiations for all five zones because their proposals achieved the three highest scores for each zone.[1] (R. Item 14, Final Determination ¶19; R. Item 10 Ex. 4, Selection Memorandum, R.R. at 171a-176a.) Gateway's proposal was ranked fifth in all five zones. (R. Item 10 Ex. 4, Selection Memorandum, R.R. at 171a-174a.) PHW, Vista, UPMC and Gateway all satisfied the 70% threshold on their Technical Submittals in all zones. (*Id.*)[2]

On August 30, 2016, the Department notified Gateway that PHW, Vista, and UPMC had been selected for all five zones and that Gateway was not selected for any zone. (R. Item 14, Final Determination ¶20.) On September 6, 2016, Gateway filed a bid protest seeking to set aside the selection of PHW, Vista and UPMC or "add or substitute" Gateway as a selected offeror to obtain "sufficient MCOs in each zone to further the goal of non-disruption of member care." (R. Item 1, 9/6/16 Gateway Protest at 3, 12, R.R. at 4a, 13a.) Gateway asserted as grounds for this protest that the selection was inconsistent with the RFP

---

[1] Vista is also referred to in the record as AmeriHealth Caritas and PHW is referred to by Gateway as Centene. (*See*, *e.g.*, R. Item 10 Ex. 4, Selection Memorandum, R.R. at 171a-176a; R. Item 14, Final Determination ¶19; R. Item 1, 9/6/16 Gateway Protest at 2, R.R. at 3a.)

[2] Eight of the other ten offerors also satisfied the 70% Technical Submittal score requirement; only two of the fourteen offerors, one in the Southeast zone and one in all zones, failed to meet that threshold and were not considered eligible. (R. Item 10 Ex. 4, Selection Memorandum, R.R. at 170a-174a.)

3

and was arbitrary and capricious and an abuse of discretion because the selected offerors had insufficient existing membership and provider networks, Gateway had greater existing membership and a substantial provider network, and the Department failed to adequately investigate and consider alleged regulatory actions and performance problems of the selected offerors. (*Id.* at 4-11, R.R. at 5a-12a.)

On September 7, 2016, the Department conducted a debriefing meeting with Gateway at which it provided information to Gateway concerning the strengths and weaknesses of Gateway's proposal and advised Gateway that its proposal was ranked fifth in all zones. (R. Item 10 Exs. 5, 6, R.R. at 178a-183a, 186a-188a; R. Item 9, R.R. at 84a-86a.) On September 14, 2016, Gateway filed a document that it characterized as "supplemental information" in support of its bid protest. (R. Item 3, 9/14/16 Gateway Supplemental Filing, R.R. at 31a-40a.) In this filing, Gateway expanded on its arguments that the Department failed to adequately investigate and consider alleged deficiencies of the selected offerors and give proper weight to Gateway's established provider network. (*Id.* at 2-3, 5-8, R.R. at 32a-33a, 35a-38a.) In the September 14, 2016 filing, Gateway also asserted that the number of MCOs selected was insufficient and five MCOs were needed in each zone, given the population to be served; that the Department did not seek clarification from Gateway and treated Gateway unequally in the evaluation process; and that the SDB scoring was improper. (*Id.* at 3-5, 8-10, R.R. at 33a-35a, 38a-40a.)

On November 14, 2016, the Director of the Department's Bureau of Administrative Services (Director) issued a Final Determination denying Gateway's protest. The Director found that Gateway's contention that five rather than three MCOs were required, its challenge to the SDB scoring, and its

4

arguments concerning investigation of other offerors were barred as untimely. (R. Item 14, Final Determination at 6-8, 10.) The Director further found that these protest grounds and the other protest grounds timely raised by Gateway were all without merit because Gateway did not show that the Department erred, acted arbitrarily or capriciously, or abused its discretion. (*Id.* at 6-16.) With respect to the merits of Gateway's contentions concerning the selected offerors, the Director concluded that the Department obtained information concerning those offerors and their affiliates and properly evaluated and considered that information. (*Id.* at 8-9, 14.) With respect to the Department's evaluation of Gateway, the Director concluded that the Department properly applied the evaluation criteria in the RFP and did not treat Gateway unequally. (*Id.* at 9-16.) The Director explained that the Department considered Gateway's existing membership and provider network and noted these as strengths, but did not give these facts overriding weight because the RFP did not require a pre-existing membership or provider network and required that other factors and objectives also be considered in scoring the proposals. (*Id.* at 9-14.) Gateway timely appealed this final determination to this Court.[3] The offerors selected by the Department for contract negotiations, PHW, Vista and UPMC, were granted leave to intervene in this appeal.

Before this Court, Gateway argues that the Director applied an incorrect standard of review in considering its bid protest and that the Director

---

[3] This Court hears Procurement Code protest appeals without a jury, on the record certified by the agency, and must affirm the determination of the agency unless the determination is arbitrary and capricious, an abuse of discretion or contrary to law. 62 Pa. C.S. § 1711.1(i); *Bureau Veritas North America, Inc. v. Department of Transportation*, 127 A.3d 871, 876 n.1 (Pa. Cmwlth. 2015).

5

erred in holding that Gateway's challenge to the number of MCOs was untimely.[4] We address the second of these arguments first.

The Procurement Code sets strict and mandatory time limits for the filing of protests. Section 1711.1(b) of the Procurement Code provides that where, as here, the protestant is a bidder, offeror or a prospective contractor, "the protest shall be filed with the head of the purchasing agency <u>within seven days after the aggrieved bidder or <u>offeror</u> or prospective contractor <u>knew or should have known of the facts giving rise to the protest</u> except that in no event may a protest be filed later than seven days after the date the contract was awarded." 62 Pa. C.S. § 1711.1(b) (emphasis added). Section 1711.1(b) further provides:

> If a bidder or offeror, a prospective bidder or offeror or a prospective contractor fails to file a protest or files an untimely protest, the bidder or offeror, the prospective bidder or offeror or the prospective contractor shall be deemed to have waived its right to protest the solicitation or award of the contract in any forum. Untimely filed protests shall be disregarded by the purchasing agency.

*Id.*[5]

---

[4] Gateway challenges only the standard of review applied by the Director and does not contest this Court's limited standard and scope of review. (Petitioner's Br. at 5, 46.) Although Gateway frames the timeliness issue in its Statement of Questions Presented as whether the Director "erred by concluding that Gateway Health's bid protest was untimely" (Petitioner's Br. at 7-8), it argues in the argument sections of its briefs that its challenge to the number of MCOs was timely and does not address the Director's rulings that its protests concerning SDB scoring and the Department's investigation of other offerors were untimely. Accordingly, Gateway has waived any contention that those grounds of protest were erroneously rejected as untimely. *In re Tax Claim Bureau of Lehigh County 2012 Judicial Tax Sale*, 107 A.3d 853, 857 n.5 (Pa. Cmwlth. 2015) ("A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue").

[5] Although an otherwise untimely protest can be allowed on *nunc pro tunc* grounds where the protestant shows extraordinary circumstances, such as fraud or breakdown in the administrative process, that delayed the filing of the protest document, *Bureau Veritas North America, Inc.*, 127 **(Footnote continued on next page…)**

A protest filed more than seven days after the disappointed offeror or bidder had notice of the grounds for the protest is thus barred as untimely, even if no contract has yet been awarded, even if the protest was filed within seven days of the agency's selection of bidders or offerors, and even if the protestant did not subjectively understand or appreciate the ground for protest. *Bureau Veritas North America, Inc. v. Department of Transportation*, 127 A.3d 871, 876-78 (Pa. Cmwlth. 2015); *JPay, Inc. v. Department of Corrections*, 89 A.3d 756, 764-65 (Pa. Cmwlth. 2014); *Collinson, Inc. v. Department of Transportation*, 959 A.2d 480, 484 (Pa. Cmwlth. 2008); *Cummins v. Department of Transportation*, 877 A.2d 550, 553-55 (Pa. Cmwlth. 2005); *Common Sense Adoption Services v. Department of Public Welfare*, 799 A.2d 225, 231 (Pa. Cmwlth. 2002). The fact that a debriefing later occurs and additional information is obtained in that debriefing does not delay the seven-day period for filing a protest, if the offeror or bidder had notice of the ground for protest before the debriefing. *Bureau Veritas North America, Inc.*, 127 A.3d at 877-78.

Where the protest challenges a term or provision of the invitation for bids or request for proposals or the issue that it raises was apparent from the invitation for bids or request for proposals, the offeror or bidder must file that protest no later than seven days after it has notice of that term or provision, despite the fact that no selection or rejection of any bids or proposals has occurred. *CenturyLink Public Communications, Inc. v. Department of Corrections*, 109 A.3d 820, 829-30 (Pa. Cmwlth. 2015); *JPay, Inc.*, 89 A.3d at 764-65; *Collinson, Inc.*,

_____

**(continued…)**
A.3d at 879-81, there is no basis for any claim for *nunc pro tunc* relief here and Gateway did not seek *nunc pro tunc* relief or argue that it is entitled to such relief.

7

959 A.2d at 484; *Cummins*, 877 A.2d at 553-55; *Common Sense Adoption Services*, 799 A.2d at 231. If an offeror first raises such a challenge in a protest filed more than seven days after it submits its proposal, that ground of protest is barred as untimely, even if other grounds asserted in the same protest are timely. *CenturyLink Public Communications, Inc.*, 109 A.3d at 827-30; *JPay, Inc.*, 89 A.3d at 764-67; *Common Sense Adoption Services*, 799 A.2d at 231-34.

Here, Gateway did not file a protest raising the contention that five MCOs per zone were needed within seven days of the date that it knew or should have known of the facts giving rise to such a challenge. It was clear from the terms of the RFP when it was issued on March 1, 2016 that the Department was not undertaking to select five MCOs to serve each of the five zones in the CHC Program and that some of the zones might have as few as two MCOs. (R. Item 10 Ex. 1, RFP at 5, R.R. at 120a.) Gateway necessarily had notice of the content of the RFP no later than May 2, 2016, when it submitted its proposal, and was therefore required to file any protest asserting that five MCOs must be selected for each zone no later than May 9, 2016. *JPay, Inc.*, 89 A.3d at 764-65; *Cummins*, 877 A.2d at 553-55. Gateway, however, did not file any protest until September 6, 2016.

Gateway argues that no protest was required in May 2016 because it was possible under the terms of the RFP that five MCOs might be selected and that it raised this ground of protest within seven days of learning that only three offerors had been selected. Neither of these contentions is accurate. While the RFP provided that up to five MCOs might be selected in some zones, Gateway did not contend in its protest that only particular zones required five MCOs. Rather, Gateway's contention concerning the number of MCOs was that five MCOs are

8

necessary in all zones. (R. Item 3, 9/14/16 Gateway Supplemental Filing at 3-5, R.R. at 33a-35a; R. Item 11, Gateway Reply in Support of Protest at 6, R.R. at 241a.)

Moreover, Gateway did not raise this claim within seven days of the Department's August 30, 2016 notice that it selected only three offerors in each zone. In its September 6, 2016 protest, Gateway asserted that it should be added or substituted for one of the selected offerors. (R. Item 1, 9/6/16 Gateway Protest at 3, 12, R.R. at 4a, 13a.) It did not, however, contend anywhere in that protest that a total of three MCOs is inadequate or that five MCOs per zone must be selected. Instead, Gateway's September 6, 2016 protest asserted that it should be added or substituted because the particular MCOs selected allegedly lack the capability to properly implement the CHC Program and because failure to include Gateway will cause disruption of coverage to its existing members. (*Id.* at 3-8, R.R. at 4a-9a.) Alleged inadequacy of particular offerors and need for the services of the protestant to prevent disruption with respect to its existing members are entirely different arguments from the assertion that a minimum number of MCOs are needed to serve a population. In fact, the only reference in Gateway's September 6, 2016 protest to the selection of five MCOs was the argument that adding Gateway would not violate the terms of the RFP because the RFP permitted selection of up to five offerors per zone. (*Id.* at 8, R.R. at 9a.)

Gateway first asserted that five MCOs are needed and that three was an insufficient number to implement the CHC Program in its filing on September 14, 2016. (R. Item 3, 9/14/16 Gateway Supplemental Filing at 3-5, R.R. at 33a-35a.) That supplemental document was filed fifteen days after Gateway learned on August 30, 2016 that only three MCOs had been selected and knew all the facts on

which this ground of protest was based. Therefore, Gateway's protest concerning the number of MCOs was untimely even if it was not required to file this protest in May 2016 based on the terms of the RFP.

Because Gateway did not assert its claim concerning the number of MCOs within seven days after it knew or should have known of the facts giving rise to this ground for protest, the Director correctly held that this claim was untimely and his denial of this ground of Gateway's protest must be affirmed. 62 Pa. C.S. § 1711.1(b); *CenturyLink Public Communications, Inc.*, 109 A.3d at 829-30; *JPay, Inc.*, 89 A.3d at 764-65; *Common Sense Adoption Services*, 799 A.2d at 231.

Gateway's only other challenge to the denial of its protest, that the Director allegedly applied an incorrect standard of review, likewise fails. Gateway argues that an agency head has broad discretion in ruling on a bid protest to consider whether the challenged procurement decision is in the best interests of the Commonwealth and that the Director's determination must be reversed because he limited his review of Gateway's protest to examination of the record for legal error.[6] We conclude that the Director did not err in the standard of review that he applied to Gateway's protest.

---

[6] Intervenor Vista asserts that Gateway waived the argument that the Director's standard of review constitutes reversible error because it did not assert prejudice in its petition for review. This argument is legally invalid. Under the language of Rule 1513 of the Rules of Appellate Procedure prior to 2015, issues not raised in the appellant's petition for review were waived. *See*, *e.g.*, *United Transportation Union v. Pennsylvania Public Utility Commission*, 68 A.3d 1026, 1042 (Pa. Cmwlth. 2013); *Common Sense Adoption Services*, 799 A.2d at 230; *Tyler v. Unemployment Compensation Board of Review*, 591 A.2d 1164, 1168 (Pa. Cmwlth. 1991). That is no longer the law. Rule 1513 was amended on December 2, 2014 effective January 1, 2015 and now provides that "the omission of an issue from the statement [of objections in the petition for review] shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record." Pa. R.A.P. 1513(d)(5). *See also* Pa. R.A.P. 1513 Official Note – 2014 (stating that the December 2, 2014 amendments "are intended to preclude a finding of **(Footnote continued on next page…)**

No broad standard of review can apply to Gateway's claim concerning the number of MCOs needed to implement the CHC Program because that claim was untimely. The Procurement Code gives an agency head no discretion to hear untimely protests to further the agency's interests or the best interests of the Commonwealth. Rather, it mandates that "[u]ntimely filed protests shall be disregarded by the purchasing agency." 62 Pa. C.S. § 1711.1(b). Thus, the standard of review that might apply to this ground of protest on the merits is irrelevant here, and the Director committed no error in denying this ground of Gateway's protest, even if a broad review by the Director were held to be appropriate for this type of challenge.

Because Gateway did not file any timely challenge to the structure or requirements of the CHC Program or to any terms of the RFP, the only portions of its protest that the Director could consider on the merits were its challenges to the Department's evaluation and selection of offerors for negotiation. The Procurement Code provides that the standard of review applicable to such protests is whether the determination was "clearly erroneous, arbitrary, capricious or contrary to law." 62 Pa. C.S. § 561; *CenturyLink Public Communications, Inc.*, 109 A.3d at 824 & n.7; *Global Tel\*Link Corp. v. Department of Corrections*, 109 A.3d 809, 813 & n.8 (Pa. Cmwlth. 2015); *Computer Aid, Inc. v. Department of Public Welfare*, (Pa. Cmwlth., No. 553 C.D. 2011, filed July 6, 2011), slip op. at

_____

(continued…)
waiver if the court is able, based on the certified record, to address an issue not within the issues stated in the petition for review but included in the statement of questions involved and argued in a brief"). Gateway timely asserted its standard of review argument before the Director (R. Item 11, Gateway Reply in Support of Protest at 1-6, R.R. at 236a-241a) and has fully argued in its brief that the Director applied an erroneous standard of review and that it was prejudiced by that alleged error. There is therefore no waiver.

11

12, 2011 WL 10843700 at *6.[7] Section 513(g) of the Procurement Code governs the purchasing agency's evaluation of competitive sealed proposals and selection of offerors for negotiation. 62 Pa. C.S. § 513(g) ("The responsible offeror whose proposal is determined in writing to be the most advantageous to the purchasing agency, taking into consideration price and all evaluation factors, shall be selected for contract negotiation"). Section 561 of the Procurement Code provides that "[t]he determinations required by the following sections are final and conclusive unless they are clearly erroneous, arbitrary, capricious or contrary to law: … Section 513(a) and (g) (relating to competitive sealed proposals)." 62 Pa. C.S. § 561. Moreover, Section 513 of the Procurement Code requires that "[t]he relative importance of the evaluation factors shall be fixed prior to opening the proposals." 62 Pa. C.S. § 513(e). A reweighing of proposals by the purchasing agency head or his designee on a standard of best interests of the Commonwealth or what is most advantageous to the agency in a post-selection protest would be contrary to this requirement that the weight to be assigned to the evaluation criteria be set before any examination of proposals.

Contrary to Gateway's assertions, the Director applied the standard set forth in Section 561 of the Procurement Code in his review of the merits of Gateway's protest and did not limit his review to whether the Department's decision was contrary to law. The Director's final determination noted that the standard applicable to his review was whether the Department's decision was "clearly erroneous, arbitrary, capricious or contrary to law." (R. Item 14, Final Determination at 12.) The Director, in his analysis of the merits of Gateway's

---

[7] Because it is an unreported decision, *Computer Aid, Inc* is not binding precedent, but is considered by the Court for its persuasive value. 210 Pa. Code § 69.414(a).

protest repeatedly considered whether the Department had erred, acted arbitrarily or capriciously, or abused its discretion and concluded that it had not. (*Id.* at 9-10, 12-14, 16.)

For the foregoing reasons, we conclude that Gateway has not shown any error in the Director's determination. Accordingly, we affirm the denial of Gateway's bid protest.

_____
JAMES GARDNER COLINS, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gateway Health Plan, Inc.,      :
      :
      Petitioner      :
      :
      v.      : No. 1924 C.D. 2016
      :
Department of Human Services,      :
      :
      Respondent      :

# **O R D E R**

AND NOW, this 24th day of July, 2017, the final determination of the Director of the Bureau of Administrative Services of the Department of Human Services is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge