# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Nurse Peer Assistance   :
Program,   :
                         Petitioner   :
  :
                      v.   :   No. 1450 C.D. 2023
  :   Submitted: May 6, 2025
Pennsylvania Department of State,   :
                     Respondent   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER         FILED: June 16, 2025

Pennsylvania Nurse Peer Assistance Program (PNAP) petitions for review of a Final Determination by the Secretary of the Commonwealth (Secretary) denying PNAP's bid protest. PNAP argues it was error to conclude the bid protest was untimely and to award the subject contract to the Foundation of the Pennsylvania Medical Society (Foundation). Upon review, we affirm.

## I. BACKGROUND

On May 4, 2023, the Pennsylvania Department of State (Department) released a Request for Proposal (RFP) for the Nurse Peer Assistance Monitoring Program. (Reproduced Record (R.R.) at 42a.) The objective of the RFP was to obtain "the services of a contractor who is qualified, experienced, credible, unbiased and able to

administer all aspects of a peer monitoring program [] to Pennsylvania licensed nurses, licensed dietitian-nutritionists, temporary practice permit holders or licensure candidates." (*Id.* at 107a.) The nature and scope of the project further stated the Department was "seeking proposals from contractors who are qualified to provide peer assistance services to impaired healthcare professions," and this particular RFP was "in relation to the licensees under the State Board of Nursing." (*Id.* at 109a.) The RFP defined "[p]eer assistance program" as "a program whereby members of a particular profession suffering from a physical or mental impairment, such as substance abuse or dependency, which may interfere with their job performance can obtain assistance, support, monitoring, prevention and intervention services from members of their own profession." (*Id.* at 108a.)

The RFP set forth various qualifications, including that "[t]he contractor [] have specialized knowledge and experience in providing peer assistance and monitoring services to health care professionals" and "a working knowledge of the Professional Nursing Law, [Act of May 22, 1951, P.L. 317, *as amended*,] 63 P.S. §§ 211-225.5, and the Practical Nurs[e] Law, [Act of March 2, 1956, P.L. (1955) 1211, *as amended*,] 63 P.S. §§ 651-667.8." (*Id.* at 110a.) In addition, there were certain staffing requirements, such as the "contractor's proposed staff shall include at least one individual with . . . [a]n active Pennsylvania nursing license." (*Id.* at 110a-11a.) Contractors were also to have "experience in peer monitoring program to licensed health care professionals," among other things. (*Id.* at 111a.) Among the listed tasks was a requirement that the contractor "attempt to develop a statewide network of peer monitors in an effort to assign each participant enrolled in the program to a peer assistance monitor, preferably who is a licensed PA nurse." (*Id.* at 116a.)

2

Questions related to the RFP were accepted until May 18, 2023. (*Id.* at 42a.) PNAP submitted questions seeking clarification as to cost submittal. (*Id.* at 105a.) The RFP was scheduled to close June 7, 2023. (*Id.* at 42a.) PNAP and the Foundation, along with one other entity, submitted proposals. (*Id.* at 470a.) The Foundation was recommended for selection, and on August 9, 2023, a Notice of Award was sent to the Foundation. (*Id.* at 468a, 473a.) PNAP was sent a Notice of Non-Award on October 20, 2023. (*Id.* at 475a.)

On October 26, 2023, PNAP filed its bid protest. (R.R. at 2a-35a.) Therein, PNAP asserted the following:

> Based upon reasonable belief, this RFP was improperly awarded to [the Foundation] based upon (1) fraud and collusion between the [Foundation] and government entities or persons, possibly the [Professional Health Monitoring Program (]PHMP[)] itself, and (2) a scoring system that rewarded the [Foundation] for agreeing to monitor nurses who receive medication assistance therapy (MAT) in violation of the Americans with Disabilities Act (ADA)[, 42 U.S.C. §§ 12101-12213]. We contend that the contract was inappropriately awarded to a non-nursing organization. We believe that the competitor was given proprietary information and given prompts to answer the RFP in the expected manner that would increase [its] score and give [it] an unfair advantage over PNAP. We believe that sections of the RFP were changed to specifically meet the qualifications of the competitor. We also contend that sections of the RFP that were answered appropriately by our agency were scored in such a way that would require our agency to act in violation of the ADA should we have been awarded the contract.
>
> We believe that the contract was awarded fraudulently, and that the committee was not given all the necessary facts to make an informed decision. We also contend that our organization was set up to answer questions from the proposal inappropriately. We assert the proposal was specifically written with the new organization in mind. . . .

(*Id.* at 2a.) PNAP proceeded to go into detail as to why it alleged fraud and collusion, such as changes in the language of this RFP for "healthcare professionals" from prior ones that specified nurses and the Foundation's knowledge since August of the award. (*Id.* at 2a-3a.) PNAP then explained in detail why it believed the scoring system "rewarded" the Foundation agreeing to monitor nurses in MAT, which it alleged violated the ADA. (*Id.* at 4a-5a.) PNAP, which provided these services since 2009, stated it is an agency "managed by nurses, for nurses," and "[n]urses need extensive guidance and compassionate care from individuals well versed in the nursing profession to navigate the monitoring program and be successful in their recovery efforts," which was "unlikely to occur with an agency used to dealing with physicians which is willing to violate the ADA in order to receive the nurse monitoring contract." (*Id.* at 5a.)

On November 6, 2023, the Foundation responded to the bid protest. It first argued PNAP's bid protest challenging the phrasing of the RFP was untimely, having been filed almost five months after the close date. (*Id.* at 477a.) The Foundation also argued PNAP's bid protest challenging the Foundation's selection was untimely. (*Id.* at 478a.) According to the Foundation, it was publicly announced that the Foundation was selected for contract negotiations on August 2, 2023, which PNAP recognized, but PNAP did not file its bid protest until October 2023. (*Id.* at 478a-79a.) Next, the Foundation argued the bid protest was meritless, stating PNAP's claims of fraud and collusion are unsupported by any evidence and were "bare accusations." (*Id.* at 480a-81a.) Moreover, the Foundation argued the facts asserted in the bid protest were not accurate. (*Id.* at 481a-83a.)

On November 9, 2023, the Department also responded to the bid protest. First, the Department asserted the bid protest, to the extent it challenged the contents

4

of the RFP and the scoring system, was untimely as it should have been filed before the RFP closed. (*Id.* at 37a.) The Department further asserted the entire bid protest was untimely on the basis PNAP alleged it learned that the Foundation was awarded this contract at the same time it was awarded a similar contract for pharmacists in August 2023. (*Id.* at 37a-38a.) Notwithstanding the timeliness of the bid protest, the Department alleged the bid protest was without merit. It denied the RFP was modified to favor any vendor and instead was aimed at soliciting the best proposals from any entity that could provide the requested services, "not limit what types of organizations could apply." (*Id.* at 38a.) The Department stated:

> Hypocritically, PNAP argues that the RFP should have contained language that established a competitive advantage for its organization by structuring the RFP in a way to ensure only organizations that provide services to nurses be responsive bidders, as opposed to a broad scope encompassing all qualified organizations that have experience in providing peer assistance services to all types of health care professionals as eligible to submit proposals.

(*Id.*)

The Department further stated it regularly reviews its technical submittals, which is what it did here. The Department explained its process from receipt of the three proposals through award to the Foundation, and asserted the fact the Foundation took proactive steps to prepare to provide the services is not indicative of collusion. (*Id.* at 39a.) The Department also argued PNAP's allegations of ADA violations were "baseless." (*Id.*)

PNAP filed a reply to the Foundation's response on November 20, 2023. Therein, PNAP argues its bid protest was timely because it was not challenging the phrasing of the RFP but the contract's award to a non-nursing agency and it was filed within seven days of the Notice of Non-Award. (*Id.* at 493a-95a.) It also

argued the Department's interpretation of the RFP was contrary to the language of the RFP, which resulted in non-uniform standards of review, and reasserted its claim of an ADA violation. (*Id.* at 496a-97a.)

Shortly thereafter, in the November 28, 2023 Final Determination, the Secretary denied the bid protest. The Secretary reasoned that to the extent the bid protest "challenge[d] the language, contents and requirements of the RFP," the bid protest should have been filed before June 7, 2023, which is the date the RFP closed. (Final Determination at 2 (citing Section 1711.1(b) of the Commonwealth Procurement Code (Procurement Code), 62 Pa.C.S. § 1711.1(b)).) Thus, the bid protest was untimely, at least in those regards. The Secretary, however, declined to find the entirety of PNAP's bid protest was untimely based on PNAP allegedly learning of the award through another procurement involving peer services for pharmacists. (Final Determination at 2-3.)

As to PNAP's issues involving the solicitation and award, which were timely, the Secretary reviewed those allegations and concluded they were without merit. Relevant for purposes of this matter,[1] the Secretary was not persuaded by PNAP's arguments related to the qualifications of the Foundation to provide peer assistance to nurses. Specifically, the Secretary stated:

> PNAP also makes much of the "peer assistance" aspect of the monitoring program that is the subject of the RFP. It insinuates that award to a "non-nursing organization" will not be in the best interest of nurses in the PHMP program. . . . However, the RFP was clear from its release that it sought "proposals from contractors who are qualified to provide peer assistance services to impaired healthcare professionals . . . in relation to the licensees under the State Board of Nursing."

[1] As discussed above, PNAP made numerous allegations in its bid protest, such as collusion and fraud and allegations of violations of the ADA, which the Secretary addressed in the Final Determination. PNAP does not appear to challenge those aspects of the Final Determination. Thus, we will not discuss them further here.

(Final Determination at 3 (citations omitted).)

Concluding PNAP's arguments were without merit, the Secretary denied the bid protest, allowed the award of the contract to the Foundation to stand, and refused to stay the contract. (*Id.* at 6.) PNAP filed a timely Petition for Review with this Court.

## II. PARTIES' ARGUMENTS

Before this Court,[2] PNAP asserts two arguments: (1) that it was error to conclude its bid protest was untimely and (2) that it was error to award the Foundation the contract. On the timeliness issue, PNAP argues it learned that it was not selected and the Foundation was selected on October 20, 2023, and it filed its bid protest on October 26, 2023. Therefore, the bid protest was filed within seven days as required by the Procurement Code.

On its second issue, PNAP argues the award of the contract to the Foundation was arbitrary, capricious, an abuse of discretion, and contrary to law because the Foundation's proposal did not meet the clearly defined requirements of the RFP. According to PNAP, the RFP sought a contractor capable of providing "assistance, support, monitoring, prevention and intervention services" to professionals licensed by the Board of Nursing and that those services be provided by their peers, i.e., members of their own profession. (PNAP's Brief (Br.) at 13.) Because the

---

[2] Pursuant to Section 1711.1(i) of the Procurement Code, we "shall hear the appeal . . . on the record of determination certified by the purchasing agency," and "shall affirm the determination of the purchasing agency unless [we] find[] from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law." 62 Pa.C.S. § 1711.1(i). Further, the record we review "consist[s] of the solicitation or award; the contract, if any; the protest; any response or reply; any additional documents or information considered by the head of the purchasing agency or his designee; the hearing transcript and exhibits, if any; and the final determination." 62 Pa.C.S. § 1711.1(h).

7

Foundation is a non-nursing organization, and instead provides services to physicians, PNAP argues the Department ignored the RFP's plain language. PNAP also contends the Foundation's proposal shows there are no licensed nurses on staff and does not demonstrate a working knowledge of the applicable nursing licensure laws, as required by the RFP. PNAP requests that the Court reverse the Final Determination, void the contract to the Foundation, and award the contract to PNAP.

The Department responds that although PNAP's bid protest as to the award was timely, the Secretary properly determined the bid protest was untimely to the extent it challenged the language, content, and requirements of the RFP. The Department explains the Procurement Code sets forth different deadlines depending on the basis of the bid protest and because PNAP seeks to challenge the language, content, and requirements of the RFP, all of which remained unchanged since the RFP was issued, those challenges needed to be filed before the RFP closed. The Department notes PNAP did submit questions during the question-and-answer period, but it did not raise any questions or concerns about the language, contents, or requirements of the RFP. Thus, according to the Department, those issues are waived.

Although those issues are waived, the Department contends those are the issues PNAP now seeks to raise on appeal, noting PNAP did not challenge much of the Secretary's reasoning in the Final Determination. The Department also asserts that PNAP seeks to raise arguments not asserted in the bid protest, and therefore, those issues are also waived.

The Department also denies the Final Determination was arbitrary, capricious, an abuse of discretion, or contrary to law. The Department disputes PNAP's assertions that the RFP required experience providing peer assistance to nurses

8

rather than healthcare professionals more generally. Under precedent from this Court, the Department contends it has broad discretion in determining its needs and courts intervene only when the agency deviates from the language of the RFP, which did not occur here. Contrary to PNAP's assertions, the Department argues the RFP did not require current staff to include a licensed nurse, just proposed staff. The Department also claims the RFP did not require an established nurse peer assistance program at the time of the proposal's submission; instead, it required "specialized knowledge and experience in providing peer assistance and monitoring to health care professionals." (Department's Br. at 21-22 (quoting R.R. at 109a-10a).) The Department asserts the Foundation's proposal satisfied these, and the other, requirements of the RFP. The Department requests the Court affirm the Final Determination.[3]

The Foundation, which intervened in this action, likewise argues the Final Determination should be affirmed. The Foundation asserts PNAP's bid protest was untimely whether challenging the contents of the RFP or the selection of the Foundation. It is untimely to the contents, the Foundation argues, because the bid protest was not filed by the deadline for proposals. The Foundation also argues the issue as to the selection was not raised in the bid protest, and, even if it had been, that challenge is also untimely. The Foundation explains it was selected for contract negotiations on August 2, 2023, of which PNAP admits knowledge, so the bid protest should have been filed within seven days of that date.

Notwithstanding whether the bid protest was timely, the Foundation asserts PNAP did not preserve the issues raised in its Petition for Review by raising them

---

[3] The Department argues that, if the Court were to rule in PNAP's favor, it cannot award the contract to PNAP, as PNAP requests. Rather, the remedy is to cancel the contract. (Department's Br. at 27 n.2.)

9

in its bid protest, which only asserted fraud and collusion or violations of federal law, issues PNAP no longer pursues. Thus, the Foundation argues, these new issues are waived.

Moreover, the Foundation argues the Final Determination was not arbitrary, capricious, an abuse of discretion, or contrary to law. The Foundation asserts PNAP is seeking to "relitigat[e] the Department's selection of the Foundation." (Foundation's Br. at 14.) The Foundation asserts PNAP "selectively quotes" the requirements of the RFP, (*id.* at 15), "excerpts a litany of disjointed sections of the RFP to ostensibly support its position," (*id.* at 16), and "cobbles together certain RFP definitions in an attempt to support its position that the RFP prohibited the selection of the Foundation," (*id.* at 17), and in doing so, alters what the RFP actually requires. The Foundation argues its proposal met the RFP requirements, and the crux of PNAP's argument appears to be its mistaken belief that a licensed nurse had to already be on staff at the time of the proposal. The Foundation asks the Court to affirm the Final Determination.[4]

In its reply brief, PNAP argues it is asserting the Department erred in awarding the contract to a non-nursing agency; therefore, it is not a challenge to the language of the RFP, and consequently PNAP's bid protest, filed within seven days of the award, was timely. It also disputes any claims that it failed to raise the issues it asserts on appeal. Specifically, PNAP points to its statement in the bid protest that "the contract was inappropriately awarded to a non-nursing organization," and the Secretary's acknowledgment in the Final Determination that PNAP was "insinuat[ing that the] award to a 'non-nursing organization' will not be in the best interest of the nurses in the PHMP program." (PNAP's Reply Br. at 3 (quoting R.R.

---

[4] Like the Department, the Foundation argues PNAP seeks impermissible relief, namely, award of the contract, which is outside the remedy provided by the Procurement Code.

10

at 2a and Final Determination at 3).)  Finally, PNAP asserts the Department and the Foundation "do exactly what they accuse PNAP of doing:  they rely on only select portions of the RFP to support the position that the contract could be awarded to a non-nursing entity." (*Id.* at 4.)  Instead, PNAP argues the RFP clearly provides that it was looking for a contractor to provide assistance to nurses by nurses.

## III.  DISCUSSION

### A.      *Whether the bid protest was timely.*

We first examine whether PNAP's bid protest was timely.  The Secretary determined it was timely as to the award of the contract but not to the extent it sought to challenge the language, content, or requirements of the RFP.  The Foundation goes one step further, asserting the entire protest is untimely because PNAP had knowledge of the award in August but did not file its bid protest until October.

The Procurement Code sets forth "the exclusive procedure for protesting a solicitation or award of a contract by a bidder or offeror."  62 Pa.C.S. § 1711.1(*l*).  Section 1711.1(a) of the Procurement Code provides "[a] bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in connection with the solicitation or award of a contract . . . may protest to the head of the purchasing agency in writing."  62 Pa.C.S. § 1711.1(a).  Subsection (b) provides the timeline for doing so, stating:

> If the protestant is a bidder or offeror or a prospective contractor, the protest shall be filed with the head of the purchasing agency within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have known of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded.  If the protestant is a prospective bidder or offeror, a protest shall be filed with the head of the purchasing agency prior to the bid opening time or the proposal

11

receipt date.  If a bidder or offeror, a prospective bidder or offeror or a prospective contractor fails to file a protest or files an untimely protest, the bidder or offeror, the prospective bidder or offeror or the prospective contractor shall be deemed to have waived its right to protest the solicitation or award of the contract in any forum.  Untimely filed protests shall be disregarded by the purchasing agency.

62 Pa.C.S. § 1711.1(b).

Here, to the extent the bid protest sought to challenge the language, contents, and requirements of the RFP, those are facts PNAP "knew or should have known" at the time of the RFP's issuance.  *Id.*  This is consistent with our precedent where we explained:

> [w]here the protest challenges a term or provision of the invitation for bids or request for proposals or the issue that it raises was apparent from the invitation for bids or request for proposals, the offeror or bidder must file that protest no later than seven days after it has notice of that term or provision, despite the fact that no selection or rejection of any bids or proposals has occurred.

*Gateway Health Plan, Inc. v. Dep't of Hum. Servs.*, 172 A.3d 700, 705 (Pa. Cmwlth. 2017); *see also UnitedHealthcare of Pa., Inc. v. Dep't of Hum. Servs.*, 172 A.3d 98, 108 (Pa. Cmwlth. 2017) (same).

Because PNAP did not file its bid protest until October 2023, we agree with the Secretary that the bid protest is untimely to the extent it challenged the language, contents, and requirements of the RFP, which was issued in May 2023 and closed in June 2023.

However, we disagree with the Foundation's argument that PNAP's entire bid protest was untimely.  While PNAP does, in the bid protest, set forth dates in August in which certain events took place, it is not clear whether those dates reflect the date PNAP avers the event occurred or the date PNAP had knowledge that the event occurred.  Therefore, like the Secretary, we decline to find the entire bid protest untimely given this ambiguity.

12

***B.***     ***Whether PNAP waived certain issues by not raising them previously.***

Before turning to the merits of PNAP's claims challenging the award, we must consider the Secretary's and the Foundation's assertions that those claims were not raised in the bid protest, which was necessary to preserve them for appellate review. Section 1711.1(g) of the Procurement Code provides that "[i]ssues not raised by the protestant before the purchasing agency are deemed waived and may not be raised before the court." 62 Pa.C.S. § 1711.1(g).

To determine if PNAP's issues were preserved, we must examine the bid protest. While the crux of PNAP's bid protest focused on allegations of fraud and collusion and an ADA violation, PNAP also challenged the award of the contract to a non-nursing organization. Specifically, PNAP "contend[ed] that the contract was inappropriately awarded to a non-nursing organization." (R.R. at 2a.) In addition, it stated: "Nurses need extensive guidance and compassionate care from individuals well versed in the nursing profession to navigate the monitoring program and be successful in their recovery efforts. This is unlikely to occur with an agency used to dealing with physicians . . . ." (*Id.* at 5a.) Moreover, PNAP reasserted these issues in its reply to the Department's response. (*See, e.g.*, *id.* at 493a ("PNAP's first challenge is to the Department's specifying significantly different evaluation criteria to allow the Department to award the contract for 'nurse peer assistance monitoring' to a non-nursing organization."); *id.* (stating PNAP never "conceived that the change would result in a contract award to a medical society, as association of medical doctors rather than nurses."), *id.* at 494a ("[T]he individual nurses in need of 'peer assistance' under the program are better served by those whose life, training, and experience have been dedicated to nursing, and not by those whose profession is focused on physician's services to patients.").) Furthermore, it appears the Secretary

13

understood PNAP's bid protest as asserting as much because the Secretary specifically responded, stating:

> PNAP also makes much of the "peer assistance" aspect of the monitoring program that is the subject of the RFP. It insinuates that award to a "non-nursing organization" will not be in the best interest of nurses in the PHMP program. . . . However, the RFP was clear from its release that it sought "proposals from contractors who are qualified to provide peer assistance services to impaired healthcare professionals . . . in relation to the licensees under the State Board of Nursing."

(Final Determination at 3 (citations omitted).)

Although not discussed as extensively as PNAP's fraud/collusion and ADA arguments, we conclude PNAP's bid protest sufficiently preserved this issue.

### C. Whether the Final Determination was arbitrary, capricious, an abuse of discretion, or contrary to law.

We now turn to whether the Final Determination was arbitrary, capricious, an abuse of discretion, or contrary to law. The core of PNAP's argument in this regard is the award of the contract to the Foundation, a non-nursing organization.

We recently explained what it means for a determination to be arbitrary, capricious, or an abuse of discretion in *BSI Construction, LLC v. Philadelphia Regional Port Authority*, 329 A.3d 36 (Pa. Cmwlth. 2024). There, we stated:

> To explain "arbitrary and capricious," this Court has stated as follows:
>
> > [A]dministrative action is "arbitrary and capricious where it is unsupportable on any rational basis because there is no evidence upon which the action may be logically based." *Lynch v. Urban Redevelopment Auth*[.] *of Pittsburgh*, . . . 496 A.2d 1331, 1335 ([Pa. Cmwlth.] 1985). The United States Supreme Court has summarized the concept of arbitrary and capricious as follows:

14

The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . The reviewing court should not attempt itself to make up for [an agency's] deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

*Motor Vehicle M[frs.] Ass[’n] [Inc.] v. State Farm Mut[.] Auto[.] Ins[.] Co.*, 463 U.S. 29, 43 . . . (1983) (citation and internal quotation marks omitted).

*IMC Constr[.] v. The Port of Phila[.] a/k/a PhilaPort* (Pa. Cmwlth., No. 516 C.D. 2020, filed December 4, 2020) (unreported),[6] slip op. at 13-14 . . . (quoting *Cary v. Bureau of Pro[.] & Occupational Aff[s.], State B[d.] of Med[.]*, 153 A.3d 1205, 1210 (Pa. Cmwlth. 2017)). We have explained that an "abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Luzerne C[nty.] Child[.] & Youth Serv[s.] v. Dep[’t] of Hum[.] Serv[s.]*, 203 A.3d 396, 398 (Pa. Cmwlth. 2019).

FN6 An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code 69.414(a).

*BSI Constr.*, 329 A.3d at 41-42 (some alterations added). In *Stanton-Negley Drug Co. v. Department of Public Welfare*, 926 A.2d 554, 557 (Pa. Cmwlth. 2007), we

held that a final determination is contrary to law when, for example, it conflicts with the provisions of the Procurement Code.

PNAP emphasizes that the award of the contract to the Foundation was arbitrary, capricious, an abuse of discretion, and/or contrary to law because the Foundation is a non-nursing organization, which is contrary to the plain language of the RFP. The RFP specifically reference nurses, as it does health care professions and professionals, more generally. (*See, e.g.*, R.R. at 109a (nature and scope of project described as "seeking proposals from contractors who are qualified to provide peer assistance services to impaired healthcare professionals," and this particular RFP was "in relation to the licensees under the State Board of Nursing.").) The RFP also discusses the establishment of a peer assistance program for nurses (and licensed dietitian-nutritionists), whereby services would be provided by "members of their own profession." (*Id.* at 107a-08a.) It also provides that any peer monitor "preferably [be] a licensed nurse." (*Id.* at 116a.) In addition, the RFP requires "a working knowledge of the Professional Nursing Law . . . and the Practical Nurs[e] Law" and a "specialized knowledge and experience in providing peer assistance and monitoring services to health care professionals." (*Id.* at 110a-11a.) Finally, the RFP requires that the "contractor's proposed staff shall include at least one individual with . . . [a]n active Pennsylvania nursing license." (*Id.* at 110a-11a.)

In *American Totalisator Co., Inc. v. Seligman*, the Supreme Court held that the Commonwealth lacked discretion to deviate from the terms of the RFP. 414 A.2d 1037, 1041 (Pa. 1980). However, upon review of the entire RFP, we agree with the Secretary that the RFP did not foreclose a proposal from a non-nursing organization. In fact, as PNAP seemingly recognized in its bid protest when it asserted the RFP language was changed from previous versions to favor non-nursing

organizations, the RFP here was more broadly worded. This supports an intent to garner a wider range of organizations to provide services, so long they have experience in providing peer assistance in the **health care profession**. Moreover, the RFP calls for peer monitors to "**preferably** [be] a licensed nurse," (R.R. at 116a), connoting being a licensed nurse is not a requirement. Furthermore, just because the RFP seeks an organization with a "working knowledge" of certain nursing licensure laws, (*id.* at 110a), does not equate to a requirement that a contractor must be a nursing organization as others may have such knowledge. In fact, the RFP also seeks an organization with "specialized knowledge and experience in providing peer assistance and monitoring services to health care professionals," (*id.* at 110a-11a), which the Foundation has. Lastly, contrary to PNAP's assertions, the RFP merely requires that, at the time of submittal, proposed staff include an active, licensed nurse, which again the Foundation's proposal satisfied. (*Id.*) Therefore, the Department did not deviate from the terms of the RFP.

We cannot conclude the Secretary's Final Determination "is unsupportable on any rational basis because there is no evidence upon which the action may be logically based." *BSI Constr.*, 329 A.3d at 41 (citation omitted). The Secretary "articulate[d] a satisfactory explanation for its action," *id.*, including that the Department was within its discretion to broaden the scope of potential bidders and to select "the most advantageous" proposal when all evaluation factors and price were considered, (Final Determination at 3, 6). We also do not see any indication that "the law [wa]s overridden or misapplied" or that the Secretary's Final Determination was "manifestly unreasonable or [wa]s the result of partiality, prejudice, bias, or ill will.*" BSI Constr.*, 329 A.3d at 42.

17

## IV. CONCLUSION

Based on the foregoing, we affirm the Secretary's Final Determination. PNAP's challenge as to the language, contents, and requirements of the RFP was untimely. As for the issues that were timely and properly preserved, the Secretary's Final Determination was not arbitrary, capricious, an abuse of discretion, or contrary to law.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Nurse Peer Assistance   :
Program,   :
                 Petitioner   :
  :
          v.   :   No. 1450 C.D. 2023
  :
Pennsylvania Department of State,   :
            Respondent   :

## O R D E R

      **NOW**, June 16, 2025, the Final Determination of the Secretary of the Commonwealth, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge